Judge Mills
delivered the opinion.
The appellee sets up in his bill, an entry for 30,00D acres of land, in the name of David Leitch, Its calls are “ on the waters of Licking, adjoining John Harris’s survey of 33.000 acres; beginning at the south corner of the same, *578 running N. 45 W. 2191 poles; thence S. 45 W. 2191 poles ; thence N. 45 E. 2191 poles ; thence N. 45 E. 2191 poles, to the beginning.” This entry was made May the 29th, 1784. On the 19th December, 1782, John Harris had made the following entry :
Aa object of location known by 2 names but easily found by either is a good locative e-all.
“ John Harris enters 30,000 acres of land on three treasury warrants, No. &c. beginning at one and a half miles above where Logan’s trace, made in 1782, crosses the first creek emptying into Licking, below his first encampment, which was below the forks of Licking, running northwestwardly, crossing the 2d, 3d and 4th creeks on that direction, 2191 poles; thence at right angles from each eud of said line southwestwardly for quantity o/toaste land."
On the 29th March, 1784, a survey was executed on this entry in the name of Harris, which commences its description by these words, “ Lying on the south side of Licking creek, one and a half miles above where Logan’s trace crossed the first creek below his first encampment, below the forks of Licking, beginning at a walnut and two ashes; thence N. 45 W. crossing three creeks, 2191 poles.” On this line the survey is constructed by lines running South 45 deg. West, each 2191 poles, with no other description than the courses, distances and timber of the corners. Licking — the Forks of Licking — Logan’s Trace — and bis first encampment below the Forks of Licking, are shewn to have been notorious before the date of this entry, and that the trace and encampment could have been fouud with ease many years afterwards.
Altho’ it is shewn that the trace was also called Clarke’s trace, yet it was known by both names and could have been found by either. The army, on the campaign of 1782, having encamped on a small branch of the creek, now called Harris’s creek* when they struck their tents marched down the small branch and crossed the creek itself, near its mouth : so that no doubt can be entertained what creek was intended by the entry and survey of Harris. The court below adjudged the calls of Harris’s entry to be well supported and attached Leitch’s entry to Harris’s entry and not bis survey, and it included all the lands held by the defendants below, for which a decree was accordingly rendered and the defendants in that court appealed.
We cannot concur with that court in attaching the en *579 try of Leitch to the entry of Harris. For the fact was that Harris had made his survey two months and three days before the date of Leitch’s entry, which expressly calls for Harris’s survey and not his entry. It would then be doing violence to the expressions, to attach it to the entry. But this difference in opinion with the circuit court will not produce a difference in result. For if Leitch’s entry is attached to Harris’s survey, as now shewn, it will still cover ali the land of the defendants. The question then arises, can the entry be sustained by thus attaching it to the survey of Harris ? Using the entry of Harris as the means of finding his survey, or even using the calls of the survey itself, his beginning is to be at a point one and a half miles above Logan’s crossing, upon the creek. This distance, on a stream of that size, not being coupled with any other object of search, ought to terminate at the end of a straight line. As the succeeding oalls of the entry requires the survey to cross tbe three next parallel creeks, discharging themselves into Licking, it may be inferred that he was not to cross Harris’s creek in the first line, of course, on the most favorable construction, the search ought to he made on the western or lower side of the creek. On the opposite side the beginning is claimed, and it stands fifty poles further up the creek than the termination of one mile and one half, and at tbe distance of twenty-four poles from the creek. Tbe proof is that this corner is somewhat obscure. No person is adduced who saw or knew it at an early period, and it might he very difficult to find it among the numerous existing trees beyond the true point, on the opposite side of the creek. Allowing tbe same latitude in making the survey within the one mile and one half, and place the corner fifiy poles within that distance, and twenty-four poles from the creek, and make ope hundred poles half above and half below the true point, and twenty four poles broad, the territory to be explored in search of the córner, and that territory on the wrong side of the creek, and it would be extremely difficult and wholly uncertain whether the corner could be found at all. If any thing then could aid the search and remove this difficulty, it would be the line leadr ing across the creek But the line itself is not shewn to be marked where it crosses the creek, and the enquirer is wholly left without any certain due to guide him. Besides it is shewn ⅛⅜1 the survey ⅛ sparsely, tho’ regularly *580 marked. And the difficulty or ease with which this cor-Bar was found when searched for in modero times, does not, as shewn |n proof, aid this entry. The finding of if was possible but by do means certain. Of course, we conce've 38 n0 notoriety is attached to the survey, it can-hot be sustained as a locative object, especially when the corner standing on the opposite side of the creek, as now found, might excite doubts of its being the true one if it was f°UDd» ar)d it is not shewn that the line at right angles, passing up the creek, was marked at all, the very line which must have lead to Leitcb’s beginning ; and from the PrQ0^s >n the cause it may ⅛ some measure be inferred that ¡t was not marked, but left,as an open tine when Harris’s survey was made. Thus we have considered this entry on t¡je rao8t favorable construction which can be given, and have allowed Leitch to avail himself of the calls of Har-rises survey, which might not then be, and probably was hot, recorded. And we have not thought it necessary to travel into the question whether an entry calling for a survey not notorious, but made conformable to ils entry, Would be a ;good locative call, when that survey was not of record, and its contents could not be known except by enquiring of the deputy surveyors, or actually exploring the ground Nor have we deemed it necessary to determine whether Harris’s entry would he affected by the flexibility of its calls, coupled with th.e last expression “ quantity of waste land.”
An entry calling for a survey, can't be attached to the entry on which the surv’y is constructed, but such appen-dant entry, tho’ attached to the first entry, may be good if -it will cover the land in dispute by surveying it both from the original ’titry and survey.
An entry the corner of a survey^ready made, but not noto-sustainable”* uni ss the’ corner is formahle^o the entry & canbe known when fcund
The decree of the circuit court must, therefore, be reversed with costs and the ca¡use remanded, with directions there to.dismiss the bill with costs.